UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANEICE LISA SYLVESTER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO:    05-5527** |
| **LAMBERT BOISSIERE, ET AL** | **SECTION: "K" (4)** |

<u>ORDER</u>

Before the Court is a **First Amended Motion to Intervene Under Rule 24(a)(2) (doc. #17)** filed by various property owners, property managers, and realty associations seeking leave to intervene in the above case under Federal Rule 24(a)(2), Intervention as of Right.[1]  The plaintiffs, tenants of rental properties in Orleans and Jefferson parish and community associations representing the tenants, opposed the motion and the matter was heard with oral argument on January 25, 2006. During the hearing, the Court requested additional briefing addressing the interest of each of the proposed intervenors in this matter.  The proposed intervenors complied with the Court's request and the matter is now ripe for decision.

**I.     Factual Background**

Several displaced Orleans Parish lessees and community associations on behalf of other,

---

[1] The following seek to intervene: Apartment Council of the Home Builders Association of Greater New Orleans, Inc., the Apartment Association of Greater New Orleans, Inc., the New Orleans Metropolitan Association of Realtors, Inc., Soniat Realty, Inc., Triple Crown Investments, L.L.C., Merill Investments, L.L.C., Eric France, Superior Property Management, Inc., Latter & Blum Property Management Inc., and Pemar Properties, L.L.C. doing business as DesignX Properties.

unnamed and displaced Orleans and Jefferson Parish tenants of rental properties, filed this suit against various state, federal, and local agencies challenging the practice of "tacking" eviction notices on the doors of leased premises.[2] The plaintiffs contend that tacking violates Louisiana Code of Civil Procedure Article 4703, the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and Title 42 U.S.C. § 1983 because the practice does not provide the tenants with notice and opportunity to defend themselves against eviction in post-Hurricane Katrina Greater New Orleans.[3]

The plaintiffs seek an order invalidating the "tacking" of eviction notices, the identity of all tenants of properties in the affected Greater New Orleans area, and notice to those tenants by mail setting rule for possession hearings sixty days from the date of mail service.[4] They further seek an order requiring proof of mail service and tacking prior to an eviction hearing.

On November 22, 2005, the parties entered into a Consent Order requiring that the non-FEMA defendants contact FEMA with the names and other information of tenants facing pending or future evictions. (*See* Rec. Doc. No. 8). FEMA must then provide the requesting defendants with the names and addresses of the tenants in its possession. The requesting defendants must then mail out a notice of the rule of possession to the best address of the tenant facing eviction. The Order further required that the rule of possession hearing could be set for no less than forty-five days from

---

[2]Constables and the Clerks of the Courts for Jefferson and Orleans Parish, the Department of Homeland Security, and the Federal Emergency Management Agency ("FEMA").

[3]Louisiana Code of Civil Procedure Article 4703 provides that:
[i]f the premises are abandoned or closed, or if the whereabouts of the lessee or occumpant is unknown, all notices, process, pleadings, and orders required to be delivered or served on the lessee or occupant under this Title may be attached to a door of the premises, and this shall have the same effect as delivery to, or personal service on, the lessee or occupant.

[4]Louisiana Code of Civil Procedure Article 4732 provides that the Court can hear the Rule "not earlier than the third day after service . . . ."

2

the date of the mailing of the notice. The Order remains effective for one year.

On December 8, 2005, the Court entered a modified order adding certain provisions to the original order and amending certain deadlines to "take into consideration the different crises and circumstances that face Jefferson Parish, the West Bank of Orleans Parish, and the East Bank of Orleans Parish." (Rec. Doc. No. 10). In Jefferson Parish and the West Bank of Orleans Parish, the rule for possession hearing would be set for no less than thirty days, and the order expired on March 1, 2006. On the East Bank of Orleans Parish, the rule for possession hearing remained at no less than forty-five days, and the requirements of the Order still expired on November 22, 2006.

Thereafter, the property owners, property managers, and realty associations filed the subject motion seeking to intervene because the Consent Orders affect their ability to evict their tenants in a timely and cost effective manner.[5] They contend that they should be allowed to intervene as of right.

The plaintiffs, however, oppose the motion contending that the matter settled nearly two months before the proposed intervenors sought to intervene in the proceeding. They contend that the motion to intervene should be denied as untimely. They further contend that the subject motion should be denied because neither of the Orders entered in this proceeding modified existing eviction law. Finally, the plaintiffs contend that the interests of the proposed intervenors were more than adequately represented by the existing parties during the course of the negotiation.

### A. Rule 24(a)(2) Intervention by Right

Rule 24(a)(2) governs intervention by right. The Rule provides that:

---

[5]On December 30, 2005, proposed intervenors filed a Motion to Intervene Under Rule 24(a)(2) which was noticed for hearing before the District Judge and set for hearing on January 25, 2006. On January 12, 2006, the intervenors filed their First Amended Motion to Intervene Under Rule 24(a)(2) before this Court asking for expedited hearing. The Court denied the motion, and set the hearing for January 25, 2006.

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicants ability to protect that interest unless the applicant's interest is adequately represented by existing parties.

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994). Courts apply a four-part test when concluding whether a party is entitled to intervention by right. A party can intervene if (1) the application is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest, and; (4) the applicant's interest is inadequately represented by the existing parties to the suit. *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001). Failure to meet one of the four elements is fatal to intervention by right. *Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978).

### 1.   Timeliness

Here, the proposed intervenors allege in their motion that they had no notice of the litigation or the District Court's orders of November 22, 2005 and December 8, 2005 until after the orders were issued. They do not otherwise address the issue of timeliness.

Plaintiffs oppose the motion contending that the First Amended Motion to Intervene is not timely. In support of their position, the plaintiffs refer the Court to *U.S. v. U.S. Steel Corp.*[6] and

---

[6] 548 F.2d 1232 (5th Cir. 1977). Like the parties in the subject case, *U.S. Steel* involved a consent order entered into between the EPA and U.S. Steel. However, one year after the District Court entered the consent order, the potential intervenors sought to intervene. They conceded that they were aware of litigation between U.S. Steel and the EPA but they misunderstood the effect of the consent decree and later decided that they should intervene. They sought to intervene after a final judgment was entered, which the courts generally disfavor.

*Jiminez v. General Motors Corp et al*[7] for the proposition that an intervention sought after a consent decree or judgment is untimely.

When determining whether a motion to intervene is timely, a court must consider the following four factors: (1) how long the potential intervenor knew or reasonably should have known of its stake in the case into which it seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when it knew or reasonably should have known of its stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let them intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness. *Ford*, 242 F.3d at 239.

Because "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner," *Sierra Club*, 18 F.3d at 1205., "the timeliness clock runs either from the time the applicant knew or reasonably should have known of his stake in the case into which he seeks to intervene or from the time he became aware that his stake would no longer be protected by the existing parties to the lawsuit." *Doe v Glickman,* 256 F.3d 371, 376 (5th Cir. 2001) (internal quotations omitted).

The prejudice issue for both parties is troubling. The plaintiffs resolved their dispute with the defendants regarding eviction and the notice requirement and might be prejudiced if the agreement is altered. Conversely, the proposed intervenors clearly have an interest in promptly making their property available in the market for potential tenants and would therefore be prejudiced

---

[7] No.CIV.A. 02-0365, 2003 WL 1342941 (E.D.La. March 18, 2003). In *Jiminez*, the potential intervenor sought to intervene in a case to assert an interest in the settlement proceeds. *Jiminez* was a personal injury suit where the plaintiff injured himself while working on an air bag system as a result of his failure to comply with the installation procedures of the defendant. The Louisiana Dealers Association believed it had an interest in the settlement but even though it participated in discovery, it failed to intervene until four months after the case settled and the matter was dismissed. The Court, relying heavily on the timeliness analysis, denied the request to intervene.

if not allowed to intervene. They further have an interest in securing the premises for renovation after the storm and to protect their interest in a speedy and economical eviction process.

The Court notes that prior to Hurricane Katrina, the law regarding evictions provided for "tacking" when a tenant could not be found. This law however, did not contemplate such a large number of tenants being displaced from their homes for such a period of time. Therefore, under the circumstances, even though the consent agreements were entered into on November 22, 2005 and December 8, 2005 respectively and the Motion to Intervene was not filed until December 30, 2005, the Court is of the opinion that the submission of the motion is timely. The Court further notes that unlike the cases relied upon by the plaintiffs, a final judgment was not entered into the subject matter and the time between the resolution and the subject motion was only 38 days.

### 2.    The Intervenors Interest in the Action

The intervenors also allege that they have a sufficient interest in the action because they are either property owners or managers or represent property owners and managers in the Greater New Orleans Area who have been injured by the Consent Orders issued in this lawsuit.

As evidence of a sufficient interest, the Apartment Council indicates that its by-laws provide that one of the purposes of the organization is to provide a vehicle through which its members can deal in unity with governmental bodies. The Council further indicates that the reason it seeks to intervene is to assist its members with evicting tenants in the most reasonable and economical fashion. It further indicates that by seeking to intervene, its seeks only injunctive relief and not monetary damages.

The plaintiffs, while not specifically addressing whether the proposed intervenors have a sufficient interest in the proceeding, contend that the proposed intervenors should not be allowed

to intervene because their interests were adequately protected during the proceeding.

A potential intervenor asserts an interest relating to the property or transaction forming the basis of the controversy in the case into which it seeks to intervene, if the potential intervenor has a "direct, substantial, and legally protectable" interest in the property or transaction that forms the basis of the controversy in the case into which they seek to intervene. *Doe,* 256 F.3d 379. In the context of intervention, the Fifth Circuit has warned against defining "property or transaction" too narrowly. *Ford,* 242 F.3d at 240. The Fifth Circuit has also indicated that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207.

However, the Fifth Circuit in *New Orleans Public Service, Inc. v. United Gas Pipe Line Company* ("*NOPS*") explicitly articulated that "it is plain that something more than an economic interest is necessary." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984). The Court explained that the term "interest" is narrowly read to mean a direct and substantial interest in the proceedings. *Id.* The *NOPS* Court further explained that the interest must be recognized by the substantive law as belonging to, or being owned by, the party seeking intervention. *Id*. at 464.

If a potential intervenor establishes that it is a "real party in interest," this "generally establishes sufficient interest" for intervention. *League of United Latin Am. Citizens, Council #4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 185). The Fifth Circuit applies the causation test to determine whether a potential intervenor is a "real party in interest" by ascertaining "whether that party caused the injury and, if so, whether it has the power to comply with a remedial order of the court." *Id.*

In this case, the property owners, the proper managers, and the realty associations own, manage, or represent owners or managers of properties leased by the plaintiffs or the unnamed plaintiffs mentioned in the complaint. Each of the proposed intervenors has an interest in using the eviction proceeding as the owners or managers would have the legal right to institute the eviction proceedings for any property it owns or manages. Further, each of the proposed intervenors, with the exception of the New Orleans Metropolitan Association of Realtors ("NOMAR") which will be addressed later herein, has an interest in the modification of the notice process and the delay agreed to by the parties because the agreement increases the time from a minimum of 3 days to a minimum of 45 days after notice before an eviction hearing could take place. This modification affects the ability of the owners and managers from being able to commence repair and leasing of the property in a timely fashion.

The issue however is different for NOMAR whose membership consists of real estate agents whose salary is determined by commissions from the renting of real estate. However, according to their supplemental brief, NOMAR also manage and lease commercial property.

NOMAR's interest relating to the Realtors who receive commission for leasing property is purely an economic interest, which, under *NOPS*, is insufficient. Therefore NOMAR, as a representative of Realtors who receive commission for leasing or renting commercial property, would not have the requisite interest required by the *NOPS* Court. However, NOMAR does possess an interest to the extent that it represents managers who manage and lease multi-family and commercial property.

### 3. **Impairment of Ability to Protect Interest and Adequacy of Representation by Existing Parties**

The proposed intervenors next contend that the agreement fashioned by the existing parties

8

did not protect their interest in a speedy and economical eviction process. They further contend that no one adequately protected their interest during the negotiation of the agreement.

Plaintiffs, in contrast, contend that the interests of the property owners and the Council were protected during the proceedings because the settlement agreement did not modify the law. In support if this argument, they contend that because the agreement provides for eviction after 45 days, the law did not change because the clerk had the discretion to set the hearing *more than 3 days after notice*.

The Court is of the opinion that neither the elected officials nor the tenants or lessees of the properties owned in Jefferson and Orleans could adequately protect the interest of the property owners and/or managers. Prior to the agreement an eviction proceeding could be instituted after a lessee was given 3 days notice. As a result of the agreement, property owners must now wait a minimum of 45 days after giving notice in order to proceed with evicting its tenant. Clearly the interests of the property owner and the tenant are not aligned. These factors weighs in favor of granting the request to intervene.

**IT IS ORDERED** that the **First Amended Motion to Intervene Under Rule 24(a)(2)** ( **doc. #17**) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS GRANTED** to the extent the **APARTMENT COUNCIL OF THE HOME BUILDERS ASSOCIATION OF GREATER NEW ORLEANS, INC., THE APARTMENT ASSOCIATION OF GREATER NEW ORLEANS, INC., SONIAT REALTY, INC., TRIPLE CROWN INVESTMENTS, L.L.C., MERILL INVESTMENTS, L.L.C., ERIC FRANCE, SUPERIOR PROPERTY MANAGEMENT, INC., LATTER & BLUM PROPERTY MANAGEMENT INC., AND PEMAR PROPERTIES, L.L.C.** (doing business as DesignX

Properties) seek to intervene. **THE NEW ORLEANS METROPOLITAN ASSOCIATION OF REALTORS, INC**., will be allowed to intervene **only** to the extent that it represents managers who manage and lease multi-family and commercial property.

**IT IS DENIED** to the extent that **THE NEW ORLEANS METROPOLITAN ASSOCIATION OF REALTORS, INC**. seeks to intervene to represent Realtors who receive commissions from the lease of multi-family and commercial properties.

New Orleans, Louisiana, this 3rd day of April, 2006

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**